ESTATE OF ROSS H. COMPTON, DECEASED, BY FIRST NATIONAL BANK OF MIDDLETOWN, EXECUTOR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Compton v. Commissioner
Docket No. 1158-73
United States Tax Court
T.C. Memo 1974-316; 1974 Tax Ct. Memo LEXIS 4; 33 T.C.M. (CCH) 1453; T.C.M. (RIA) 740316; December 23, 1974, Filed. William E. Rathman, for the petitioner. Donald W. Mosser, for the respondent. HALL MEMORANDUM FINDINGS OF FACT AND OPINION HALL, Judge: Respondent determined a $6,992.42 Federal estate tax deficiency against the Estate of Ross H. Compton. The sole issue is whether decedent's assignment of two non-contributory group term life insurance policies *5 to his wife approximately 15 months prior to his death was made in contemplation of death within the meaning of section 2035. [1]
FINDINGS OF FACT Most of the facts have been stipulated and are found accordingly. Decedent, Ross H. Compton, was a resident of Middletown, Ohio, when he died testate on January 17, 1971. He was 46 years of age. Letters testamentary were issued to the First National Bank of Middletown, Ohio. Decedent's Federal estate tax return was filed with the district director of internal revenue at Cincinnati, Ohio. Prior to his death decedent was a project engineer with Armco Steel Corporation ("Armco") in Middletown, Ohio. He had been employed by Armco since 1959. On August 1, 1960, the Equitable Life Assurance Society of the United States ("Equitable") issued a noncontributory group term life insurance policy to Armco covering the lives of eligible Armco employees. Decedent was a covered employee. On June 19, 1970, a new policy was issued to replace the prior policy issued on August 1, 1960. Each eligible employee covered by the Equitable *6 policy was issued a certificate evidencing participation in the Equitable plan. Decedent was issued certificate number 1115 with a face amount of $22,500. On July 9, 1968, the Union Central Life Insurance Company ("Union") issued a non-contributory group term life insurance policy to Armco covering the lives of eligible Armco employees. [2] Decedent was a covered employee. Each eligible employee covered by the Union policy was issued a certificate evidencing participation in the Union plan. Decedent was issued certificate number 578442731 with a face amount of $28,500. The premiums for both the Equitable and Union policies were paid by Armco. Neither policy provided for cash, loan or paid-up value to the employees covered by the policies. Each policy was conditioned upon the maintenance of a minimum number of employees in the group and the payment of the annual premium. On May 6, 1966, decedent designated his wife, Joan M. Compton ("Joan"), as primary beneficiary, and his three minor children as equal contingent *7 beneficiaries, under both the Equitable and Union policies. On October 1, 1969, in accordance with the suggested procedures for assignment of group life insurance for employees of Armco, decedent designated his estate as the primary beneficiary under both policies, and on October 2, 1969, Joan's birthday, decedent irrevocably assigned all of his rights in each policy to his wife. These assignments vested Joan with the sole and exclusive right to designate and change beneficiaries under the policies; to exercise all options, rights or elections provided in the policies; and to cancel or surrender any interests in the policies. The assignment of these policies was accepted by the respective companies. On October 3, 1969, Joan designated herself as primary beneficiary and her three minor children as contingent beneficiaries of these policies. On December 1, 1970, decedent executed a Revocable Trust Agreement and a will, which replaced an essentially identical will executed in 1962. On the same day Joan executed a will which also replaced an essentially identical will executed in 1962, except that this will provided that in the event decedent predeceased her, Joan's residual estate *8 was to pass to the trustee of the Revocable Trust Agreement executed by decedent. In the years prior to his death, decedent had made certain gifts to his wife. On February 27, 1959, decedent and his wife purchased their residence for $23,000, taking title as tenants in common. The $8,000 down payment was paid entirely by decedent. On April 1, 1960, decedent gave his wife 113 shares of stock in Cameron Machine Company.These shares had a cost basis to decedent of $5,494.98, and a fair market value of probably twice that amount on the date of the gift. Decedent had no history of operations, hospitalization or heart disease. He participated in athletics, including tennis, golf, swimming and skiing. Two weeks before his death, decedent and his family had been in Michigan on a skiing vacation. On January 17, 1971, while attending Sunday school class with his family, decedent complained of a headache. He left class early to go home and get some aspirin and returned at the end of class to pick up his wife and children. From there decedent proceeded directly to the hospital emergency room. As he was being admitted, decedent collapsed and died. Death was attributed to acute myocardial *9 infarction. Joan, as primary beneficiary of the Equitable and Union policies on the life of decedent, received the proceeds of both policies. None of these proceeds were included in decedent's gross estate on the Federal estate tax return filed by petitioner. In his statutory notice, respondent determined that the two policies represented gifts made in comtemplation of death and should have been reported in decedent's gross estate pursuant to section 2035. [3]
OPINION The sole question presented in this case is whether the assignment by decedent of two insurance policies on his life was made in comtemplation of death so that the face value of the policies is includible in his gross estate under section 2035. [4] Because the assignments occurred within three years of death, subsection (b) of that section establishes a rebuttable presumption that they were so made. *10 The purpose of section 2035 is "to reach substitutes for testamentary dispositions and thus to prevent the evasion of the estate tax." . The fact that a decedent was not in fear of imminent death is not controlling. The crucial question is one of fact, namely, whether, in light of all the circumstances, the dominant motive in making the assignments was the thought of death or a purpose normally associated with life. ; . Petitioner's burden is particularly heavy where the property transferred is so inherently death-oriented as life insurance. (C.A. 5, 1973). Petitioner first argues that decedent was young, healthy and athletic and did not expect imminent death. Clearly his death was both sudden and completely unexpected. However, expectation of death must not be confused with contemplation of death. The question is not whether decedent expected imminent death but whether the assignment of the policies was motivated by purposes associated with the distribution of *11 property in anticipation of death. ; (C.A. 5, 1971), certiorari denied . The physical condition of the decedent is one objective factor to which the courts may look to establish a subjective life motive for a gift, but good health alone is insufficient to overcome the statutory presumption favoring respondent. This is particularly true where the subject of the gift is so testamentary and death-connected in character as life insurance. Indeed, except in the event of death, there is little if any significance or meaning in a transfer of a life insurance policy which had no value except at death. Petitioner also argues that decedent had established a pattern of lifetime giving which is evidence that a gift made by decedent within three years of death was not made in contemplation of death. Decedent in this case had given his wife Joan a half interest in their home purchased in 1959 and certain shares of stock in 1960. He assigned the policies in question to Joan on her birthday in 1969.We are not persuaded that decedent had established, or indeed could establish, *12 a pattern of lifetime giving of sufficient frequency or magnitude to overcome the countervailing consideration that the policies assigned had no value whatsoever except in the event of decedent's death, and the only evident purpose or advantage in assigning the policies appears to be the avoidance of estate taxes at decedent's death. The lifetime gifts, unlike the group term policies, had substantive significance without regard to decedent's death. Petitioner also argues that decedent assigned the policies to give his wife financial security and independence. However, the policies had no value at the time assigned, and Joan was the primary beneficiary both before and after the assignment. Only in the event of his death, moreover, would her financial security be advanced by the assignment, so that petitioner's argument merely reinforces the necessary conclusion that death was contemplated. Moreover, the evidence does not show that Joan took any immediate or definitive steps to plan her estate. Rather, it appears that decedent initiated the planning of his estate and Joan merely executed a will which was both essentially reciprocal to her husband's will and similar to her previous *13 will. If the evidence tends to prove anything, it is that the assignment of the group policies and the subsequent execution of a will in trust by the decedent was part of an integrated testamentary plan. See (C.A. 10, 1946). The transfer appears to accomplish no purpose other than to substitute for a testamentary disposition of the property, which, along with avoidance of estate taxes, is not a life motive. Petitioner relies primarily on (Ct. Cl., 1969), a case which also involves the assignment of group term life insurance which lacked any cash or loan value. The Court of Claims found that the decedent was in good health, without any prior history of illness; that he had 14 life insurance policies other than the one in issue which were all owned by his wife and sons, and, in addition, had made several substantial gifts to his wife and sons during the four years prior to his death; and that the assignment of the group policy was of some immediate value to his wife in that it permitted her to plan her own estate. The Court concluded that the executors had carried their *14 burden of proving that decedent's dominant motives in making the transfer of the group policy were life-motives and the transfer was not in contemplation of death. We believe that, even assuming that case is considered to have reached a correct conclusion on its own facts, it is distinguishable on those facts. The lifetime gifts in that case were more substantial and frequent than here.Moreover, we are not persuaded that the group term policies significantly affected Joan's ability to plan her estate, or, that if they did, they did so in any sense other than in protecting her estate against the eventuality of decedent's death. Neither are we persuaded by (N.D. Ga., 1972), which is not only distinguishable on its facts, but finds the combination of decedents' youth and good health plus an apparent absence of any motives in transferring the group life insurance involved is sufficient to rebut the presumption contained in section 2035(b). We cannot agree. More in point, in our view, is In that case decedent took out a flight insurance policy and assigned it to his son just before *15 embarking on a fatal flight. As in this case, decedent was in excellent physical condition and did not expect to die. The insurance there had no value or significance except in the event decedent were disabled or died. The executrix argued that in making the assignment decedent contemplated that the plane would crash and he would be physically disabled, but he did not contemplate that he might be killed. The Court was not convinced. The Fifth Circuit found on the facts that the taxpayer had failed to meet its burden of proof that the transfer was to accomplish some specific lifetime purpose. We hold that petitioner has failed to carry its burden of proof: the assignment was made within three years of death; the property in question was inherently death-oriented; the policies (non-contributory, group term insurance) provided no present benefit in the form of cash, loan or paid-up value; and the evidence, when considered most favorably to petitioner, is insufficient to establish a dominant, controlling and compelling reason for the assignment unrelated to the possibility of decedent's death. While we give considerable weight to the fact that group term life insurance policies *16 without any cash or loan value during decedent's lifetime are the subject matter of the gift, we do not accept respondent's argument that as a matter of law a life-associated purpose can never be established in a case involving the assignment of non-contributory, group term life insurance made within three years preceding the assignor's death. We conclude here only that petitioner has not established the absence of a death-related motive to a degree sufficient to rebut the statutory presumption in this case. Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect during the year in issue. ↩
2. This policy was also issued to replace a previously issued policy. The record, however, does not include any information regarding the prior policy. ↩
3. Respondent has stipulated that decedent did not retain any incident of ownership in the Equitable and Union group term life insurance policies by reason of decedent's right to terminate his employment with Armco. ↩
4. SEC. 2035. TRANSACTIONS IN CONTEMPLATION OF DEATH. (a) General Rule. - The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, in contemplation of his death. (b) Application of General Rule. - If the decedent within a period of 3 years ending with the date of his death (except in case of a bona fide sale for an adequate and full consideration in money or money's worth) transferred an interest in property, relinquished a power, or exercised or released a general power of appointment, such transfer, relinquishment, exercise, or release shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this section and sections 2038 and 2041 (relating to revocable transfers and powers of appointment); but no such transfer, relinquishment, exercise, or release made before such 3-year period shall be treated as having been made in contemplation of death. ↩